The next case this morning is 523-0067, People v. Russell. Arguing for the appellant is Patrick Sullivan. Arguing for the appellee is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Good morning, your honor. We have read your briefs previously, and we're ready for our argument today. Mr. Sullivan, are you ready to proceed? I'm ready, your honor. Thank you. I may do so then. Thank you. All right. Good morning, your honors. My name is Patrick Sullivan. I'm an attorney in the Office of the State Appellate Defender, and I represent the appellant in this case, the defendant in the case below, Mr. Christopher Russell. Your honors, Mr. Russell was convicted of a domestic battery A2 at the conclusion of a jury trial, a jury trial in which the complaining witness offered no live or sworn testimony against him. During that jury trial, there were only three main pieces of evidence that in any way tended to support a conviction for domestic battery A2. Those three pieces of evidence were the complaining witness' statement on a 911 call that was recorded, saying Chris Russell hit me, her prior statement on a body-worn camera saying much to a similar effect, Chris Russell hit me, and the complaining witness' statement as testified to by the responding officer that Chris Russell hit me. Those are the three main pieces of evidence the state had that supported their conviction. The problem, though, is that none of those three pieces of evidence were introduced with the proper foundation. Without the proper foundation to have those, any one of those three pieces of evidence before the jury introduced into Mr. Russell's trial, each one of those pieces of evidence was inadmissible, and as a result, Mr. Russell's conviction cannot stand. Now, the state apparently attempted to use rule, or the rule 115.10.1 to have these three pieces of evidence admitted substantively, but the foundational requirements of 115.10.1 are essentially the same. We know from the case law as foundational requirements for getting an extrinsic evidence for any prior inconsistent statement. So where the state failed to do that for all three of these pieces of evidence, there was no actual inadmissible, or no actual admissible evidence that was admitted against Mr. Russell. Now, I'll go through each of these pieces of evidence one by one, the 911 call. The only question the state asked in foundation was to the complaining witness was, do you remember calling 911 that evening? The complaining witness, of course, said no, I don't recall. I have no recollection of that. However, that was not enough. That was not adequate foundation to then play the 911 call in its entirety in front of the jury for Ms. Hettinger, the complaining witness. What the state needed to do, as simple as it sounds, is then ask, is direct Ms. Hettinger to the time, place, circumstances, and content of her prior inconsistent statement. So essentially, all the state had to then do was say, either say, did Mr. Russell hit you that day, in which then they would have a contradiction from her prior statement, and they could play it, or possibly, preferably, they could have said, asked Ms. Hettinger, did you state on the 911 call that Christopher Russell hit you? The state never asked that absolutely essential foundational question. And why is that important to ask that question, even if Ms. Hettinger may well have said, I don't recall, or the state may have thought she'd say, I don't recall, to the content? It's because, as Grayson tells us, going back some 60 years, I think, to the Illinois Supreme Court case, People v. Perry, P-E-R-R-I, it's essential that a witness, before being confronted with extrinsic evidence of a prior statement, be allowed to confirm, deny, and or explain any inconsistency. So, for lack of a better word, dumping an entire recording of the complaining witness on 911 in front of her, without having presented her with the content of those statements first, through questioning, was foundational error. This 911 call never should have come into evidence without these foundational questions being asked. And we know from Grayson, from, I think it's People v. Moore, cited in the briefing, and People v. Smith, that the remedy is exclusion. So, this is reversible error here, well, without proper foundation to get these things in under 11510.1. I'll also just quickly go through the body-worn camera statement of Ms. Hettinger that Mr. Russell hit me, also had- In the section that you just quoted, what's our standard of review here? Because I think you and your opponent have different difference in opinion on what the standard is. Yeah, so I would argue that this is a de novo standard of review, because I do think this is a question of law. I'd say purely of law, it's foundational strictures that need to be met. Well, aren't we asked to determine whether the court's factual findings are against manifest weight, and in regard to what it decided with regard to these inconsistent statements? I think we're able to look at what the state did and didn't ask, and be able to say the state needed to ask objectively, regardless of what else happened, these certain questions in foundation, and they did. Now, if your honors would disagree with that, and say that this is sort of abusive discretion review, I think even under that different standard, or slightly more lenient standard, this would still be prejudicial and reversible error. These were the only three pieces of evidence against Mr. Russell, and they were admitted without proper foundation. That amounts, at least in my reckoning, to an unfair trial. My proceeder, did you have anything to follow up on? Thank you, I just wanted you to address that. Yeah, absolutely. So back to the body-worn camera statements on that. The only question the state asked here was, if we were to ask, or something to the effect of, if I were to ask you any question about what happened that night, your answer would be, you don't remember. That is not the same, and that is not adequate. That's not the same as asking, did you tell Officer Chemnitz on body-worn camera that Chris Russell hit you? In short, that's the magic question. It's really that simple, and the state didn't do it. Then Ms. Hedinger could have said yes, and they have their evidence. They have her sworn acknowledgment that she said it. She could have said no, in which, I guess, in which she could have had an opportunity, possibly, to explain, or, excuse that, sorry. She could have said no, in which the state could have then introduced extrinsic evidence to perfect the impeachment, or she could have explained. She could have said yes, but, or yes, and, and that's a big, crucial part here. It's that Ms. Hedinger has the, I guess, de facto only witness against Mr. Russell, even though she offered no sworn testimony against him at trial. It's a big deal that she didn't, she wasn't afforded the opportunity before herself hearing her own recordings to say, I mean, to perhaps have said, yeah, I told the 911 officer that, but I was upset with him at the time and didn't really mean it, but he didn't really do that. Yes, I said that, but that's not really how things went, and then the state can bring in the extrinsic evidence, and then the jury can decide for themselves what is the truth here, but without that key piece of being able to explain to explain, deny, or confirm, this stuff should not have been played for Ms. Hedinger. And then moving quickly on to the last piece, which was Officer Cummins' testimony about the injury and the exhibit showing injury. That is completely inadmissible under 115.10.1. Ms. Hedinger was not even present at the trial. The record indicates when Officer Cummins testified that she said that. She was never subjected to cross-examination about that statement from Officer Cummins that she said that. So that, I think, I mean, I would maintain that even just admission on that third piece of evidence is clear error here and reversible error, which brings me to one last point. There are various degrees to which each of these three pieces of evidence was, admissibility issues were preserved about the evidence. The first 911 call was preserved properly. The issue of the second, the body-worn camera, was, I guess, not preserved in that it was objected to, but not included in a post-trial motion. And that third piece of evidence, the officer's testimony, the issue of admissibility on that was not preserved at all. I would argue that this is an issue of plain error and that I would urge this court to find that the evidence was closely balanced. Why was it closely balanced? Because there was no properly admitted evidence against Mr. Russell tending to show a domestic battery A2. The three direct pieces of evidence against him, these prior and consistent statements, were all improperly admitted and before the jury. And in that case, we have to look at what was properly admitted to weigh was the evidence close. Thank you. Questions, Justice Cates? No, thank you. Questions, Justice Barberos? Not at this time, thanks. It seems to me that the issue boils down to how specific does the state's questions have to be. And when you have a defendant who's denying, even making the 911 call or denying remembering making the 911 call or denying, other conversations even took place. I mean, how specific does the state have to get to try and lay that foundation when the defendant did not, or a witness denies even making the statements? They're not only saying they're inconsistent, they're saying, I didn't even make those statements. So the fact that 911 call was made seems to be contradictory to the witness's testimony in and of itself. Is that not accurate? Your Honor, in answering that, I would say she was never asked about the content. And maybe that's just what it boils down to here. It's that she was asked, do you remember making a 911 call that evening? She says, no, I don't remember. So there's an issue of remembering making the call and all the state had to do from our position. And I think the case law bears this out in Grayson and in Halbeck. In Grayson, there's a very, I think the most on point part of the case law I could find on this issue was, there was nothing to impeach until, just because this is so important, I think, our case. I do want to just give a complete site here. It's People v. Grayson, 321 Illinois, App 3D 397. It's at. But in Grayson, the defendant did not dispute making a 911 call. He just denied what was said during the call or dispute what was said. But here, the witness doesn't even remember making the call. So that seems to be distinguishable from Grayson. I agree that that's a different fact. And in Grayson, there was no lack of memory as to the call, but I think under my reading of Grayson and Halbeck, the state still had to ask as to the content. Ms. Hedinger may well have said, I don't remember, but I think it's a different proposition to be confronted with something you actually said. Someone could ask me, did you have a conversation with X yesterday? I may not recall. Did you, in a conversation with X, say ABC? That's the question that needed to be asked. She may well have said, I don't remember, but it needed to be in front of her, the content, circumstances, time and place. And I submit it was not. Thank you. Ms. Sideratos, ready to proceed? Yes. May I do so? May it please the court. Good morning. My name is Jessica Sideratos and I represent the people. Defendant argues that the people did not demonstrate inconsistencies with the victim's testimony, with one, her statement she made to the 911 operator, two, her statement she made that were captured by Officer Kibnitz's body camera, and three, her statement to Officer Kibnitz that she was punched in the collarbone and it hurt. Inconsistencies for the purposes of section 115-10.1A do not require a direct contradiction, but only a tendency to contradict the witness's testimony. A witness's professed memory loss can be enough to allow the introduction of a prior inconsistent statement. Inconsistencies include evasive answers, silence and changes in position. The determination of whether a witness's prior testimony is inconsistent with her present testimony is left to the sound discretion of the trial court. The admission of evidence is left to the sound discretion of the trial court, and therefore this issue should be reviewed for an abuse of discretion. First, proper foundation was established for the- Let me stop you for one. I just want to make an observation about your brief. You don't have a fact section in your brief, which is perfectly fine, but I did note that from page two to page nine of your brief, it's nothing but facts before, you know, it's under the analysis section, but it's nothing but facts from two to nine. And I was just curious why we didn't just label that as a fact section and then get into the analysis, because I kept waiting for the argument and I kept reading, reading, reading, reading, and I was like, well, these are all the facts that you're going to rely on. I would have put that in a fact section. You don't have to answer that, just an observation. Please continue. I apologize, your honor. That probably would have been better served in the facts section. You're right. No problem. First, proper foundation was established for the admittance of the 911 call because the victim, Ms. Hedinger, was asked if she made a 911 call, denied remembering making the 911 call, and then was confronted with a 911 call. This is not a case where the witness was subject to unfair surprise. During the trial, the people asked Ms. Hedinger if she called 911 on December 26th, 2021, and Ms. Hedinger testified that she had no recollection of calling 911. The people then asked Ms. Hedinger to identify her voice on the 911 call. The court asked that the people connected up, which the people did by asking whose voice was on the call. Ms. Hedinger was asked if there was anybody else that would give their address of Cardinal Drive and the name of Candace Hedinger, and Ms. Hedinger said that there was only one Candace Hedinger that lived at that address. This is a situation where the victim was giving evasive answers, but the people properly laid the foundation of the 911 call by asking her about it, and then confronting her with it so that she had the chance to explain. Second, the foundation was properly laid for the body camera footage, because Ms. Hedinger testified that she could not recall speaking to police. She could not recall showing them clothing or stating what caliber gun defendant had, and then Ms. Hedinger was confronted with a body camera footage of her prior inconsistent statement. Proper foundation was laid where Ms. Hedinger testified that she could not recall December 26, 2021, and could not recall speaking with police. Then while on the stand, Ms. Hedinger was confronted with the body camera footage of her speaking with police. When People's Exhibit No. 1 was played, Ms. Hedinger testified she could not recognize herself on the video. She testified she could not recognize the child on the video or the child's voice. Ms. Hedinger cried as she declined to answer the people's questions regarding the body camera footage. This situation is what Section 115-10.1 was created to protect, where a victim gave a statement that was recorded, and then later when called to testify, she gives evasive answers or silence. The people even asked the victim if they were to ask any question regarding what happened on December 26, 2021, would her answer be that she could not remember? And Ms. Hedinger answered that she would not remember anything from that date. Third, Officer Kimnitz's testimony that Ms. Hedinger told her she was struck by defendant with a closed fist and that it hurt was admissible. Officer Kimnitz identified People's Exhibit No. 6 as a picture taken of Ms. Hedinger's left collarbone where she claimed she'd been struck by defendant. Officer Kimnitz testified that Ms. Hedinger told her it hurt. Ms. Hedinger had already testified that she could not recall the date of December 26, 2021, and could not recall speaking with police at least five times, and she testified that she could not recall having any injuries. Therefore, it was proper to allow the introduction of Officer Kimnitz's testimony regarding Ms. Hedinger's prior inconsistent statement that defendant punched her with a closed fist and it hurt. But furthermore, the photograph clearly depicted an injury to the victim. Therefore, any error admitting the testimony that it hurt would be harmless. Finally, only the 911 call was objected to in a post-trial motion and properly preserved for appeal. Defendant's challenge of the body camera footage and the testimony regarding the victim telling the officer she was struck fails under the first prong of the Plain Error Doctrine because the evidence was not so closely balanced that the two prior inconsistent statements did not alone tip the scales towards the jury finding defendant guilty of domestic battery. Here, there was security camera footage of defendant breaking down the victim's door. Then the victim called 911 and the police immediately came to the scene and photographed the doorframe and her injuries. Defendant gave a statement to the police that he was angry with the victim because she owed him $500. Defendant's two threatening voicemails were also admitted as evidence. The jury could properly consider this evidence and would find defendant guilty of domestic battery through insulting or provoking contact. This is not a case that was closely balanced. Ultimately, this was clearly an uncooperative witness who claimed memory loss for nearly every question asked of her, but she was questioned regarding the date, the 911 call, her speaking with police, and her injuries. She was directed to the time, place, and circumstances of her statements, and she was not unfairly surprised when she was then confronted with the exhibits. In this case, the trial court did not err in determining Ms. Hedinger's 911 call, her statements captured by body camera footage, and Officer Kimnitz's testimony that she said she was punched and it hurt were inconsistent with her trial testimony that she could not recall anything, and they were therefore admissible. The people respectfully request this court affirm defendant's conviction and sentence. Are there any questions I could answer at this time? I have a question. I don't understand how you arrive at abusive discretion when we have a statute that we have to interpret here and the admissibility of evidence under that statute. I believe that the trial court made the determination that the testimony was inconsistent, and case law provides that the standard of review is abusive discretion when a trial court reaches a conclusion regarding the admissibility of evidence. The trial court makes a decision once the validity of the admissibility is determined, but here we have a question as to the validity, don't we? I believe that the issue involved was whether the trial court erred in finding that the statements were inconsistent for the purposes of Section 115. Well, maybe I misunderstand. I thought that the whole purpose of the defendant's argument was that they didn't raise the inconsistency. Like in the 911 call, they didn't lay the proper foundation to allege the inconsistency. Are you saying they did lay a foundation for the inconsistency? Yeah, I'm saying that the people did lay a proper foundation for the admittance of the evidence, given that the victim- What was that as it relates to the 911? Asking her, did you call 911? And then when playing the 911 call, asking her, is this your voice? Is this you who said this? Directing her to the 911 call to ask her about it. So asking her, is this your voice? Is this what you said that's sufficient under the statute? After being asked if you've made a 911 call and then denying remembering making the 911 call, I think that's proper. Okay, thank you. Questions, Justice Barberos? No, thank you. Thank you. Mr. Sullivan, rebuttal? Yeah, I just wanna hit a few points on rebuttal. First, we don't disagree with the state's, I guess, point about there being a tendency, or about contradiction about, I mean, there's solid cases like Flores Supreme Court case that says a lack of memory, can be inconsistent. That's not, we embrace that that's the case. However, a lack of memory as to simply making a statement as opposed to the content of the statement is the crucial distinction here. And because Ms. Hedinger was never confronted with the content of the statement, or the time, place, or circumstances of the content of her statement on any one of these three pieces of evidence, before extrinsic evidence of that prior statement was introduced, these things were not admissible. And I do wanna underline that point before. And here, it may also boil down to the fact that we argue that the sequence matters. Halbeck, Grayson, both state, I'll read from Halbeck by head note four, we hold that section 115.10.1 does not excuse the need for a proper foundation prior to the admission of an inconsistent statement, either for impeachment or a substantive evidence. Thus before introduction of extrinsic evidence of a prior inconsistent statement, the witness must be confronted with it, whether it is offered for impeachment or substantive purposes. That does not happen here. Sorry, your honor. No, no problem. Does the catch all that the state asked, would your answer be you don't remember to any question that I might ask about that date? And she said, I would not remember anything, or yes, my answer would be that I don't remember. Is that catch all sufficient for that? No, we would say no. And I think it's not that hard to just go through and ask the questions. I don't disagree with that. I was just wondering whether, you know. Sorry, not to be flippant, but really when the state, when there are these big kind of bombshell pieces of what's otherwise hearsay evidence, just ask the question, just say, in that 911 call or on that body-worn recording, did you say this? She can say yes, she can say no. And without that, she, I mean, I think there's a big problem, especially because this was a jury trial where the state is playing things for the jury without proper foundation. This was not a bench trial where we can kind of leave it up to the court to the court's sound judgment to consider what's properly and what's improperly admitted. You can't unring that bell. And I think there's also a problem with the trial court here several times in the record saying, well, subject to connecting this up or subject to completing the foundation for this, I'll let the jury hear it now. I think that was also very problematic in this case. And we do mention that in the briefing. And then the last point I just wanted to hit that I didn't hit quite enough, or I think quite sufficiently in my opening is that this is a matter of closely balanced plain error. And that I would just underline for the court that the law is that the court should be considering only the properly admitted evidence against Mr. Russell as to the DBA-2, the domestic battery A-2. Our position is none of the evidence, these three pieces of statements that tended to prove the DBA-2 were properly admitted. Therefore, at the very most, the evidence was closely balanced. And even if not each of these three issues as to the three pieces of evidence was properly preserved, this was a repeated issue in a closely balanced case that rendered the trial unfair. Any further questions, I'm happy to answer in the remaining time. Thank you, Mr. Sullivan. Questions, Justice Cates? No questions. Thank you. Justice Barberos? No, thank you. All right, thank you. All right, thank you very much, your honors. All right. As I said before, we've read your briefs. We'll consider the record and your arguments today. We'll take the matter under advisement and issue a decision on due course.